**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MICHAEL FRANKO,

Plaintiff,

v.

OSKAR LEWNOWSKI, ORION RESOURCE PARTNERS (USA) L.P., ORION COMMODITIES GP LIMITED, ORION COMMODITIES MANAGEMENT LLC, and JOHN DOES 1-10,

Defendants.

Case No. 1:21-cv-06115-VSB

**AMENDED COMPLAINT**

(Jury Trial Demanded)

Plaintiff Michael Franko (hereinafter "Franko" or "Plaintiff") acting by and through his attorneys, Lowenstein Sandler LLP, by way of Complaint against Oskar Lewnowski ("Lewnowski"), Orion Resource Partners (USA) L.P. ("Orion Partners"), Orion Commodities GP Limited, Orion Commodities Management LLC, and John Does 1-10 (collectively, the "Defendants"), alleges as follows:

## SUMMARY OF THE ACTION

1. This is an action to recover the compensation due to Franko for his extensive efforts as a co-founder to prepare a new commodities trading fund for launch. To induce Franko to provide these services, Defendants promised to provide him with equity in the new business (35% of the Class A interests of the new fund itself, and 50% of the Class A interests in the fund's investment advisor) and, following the fund's launch, employ him as the fund's Chief Investment Officer at a salary of $1,500,000. However, on the eve of the fund's launch, and after receiving the fruits of nearly two years' of efforts by Franko, Defendants cut Franko out of the new business venture on pretextual grounds, evidently so that the fund's other co-founder,

Defendant Oskar Lewnowski, could appropriate to himself and to his family interests the equity promised to Franko.

2. To add insult to injury, Defendants then refused to offer any compensation to Franko whatsoever notwithstanding the hundreds of hours he invested to ready the new fund for launch, thus forcing Franko to file this action to recover the compensation promised him.

**PARTIES**

3. Plaintiff Michael Franko is a resident of the state of New Jersey. During the events described herein, Franko was a resident of the state of New Jersey.

4. On information and belief, Defendant Oskar Lewnowski is a resident of the state of New York, and during the events described herein, Lewnowski was a resident of the state of New York. Lewnowski is the founder and Chief Investment Officer of Orion Partners.

5. Defendant Orion Resource Partners (USA) L.P. is a Delaware limited partnership. According to its website, Orion Partners is a global alternative investment firm "specializ[ing] in institutional metals and mining investment strategies in the base and precious metals space." Its principal place of business is 7 Bryant Park, 1045 Avenue of the Americas, New York, New York 10018.

6. On information and belief, Defendant Orion Commodities GP Limited is a limited partnership. On information and belief, Orion Commodities GP Limited was established as part of the corporate structure to implement the new trading fund at issue in this action; this entity served as the vehicle by which new investors would provide their capital investments for the fund.

7. Defendant Orion Commodities Management LLC is a Delaware limited liability company that serves as the investment manager for the new commodities fund at issue in this action.

8. Defendants John Does 1-10 are unknown entity parties who may properly be made parties because they are affiliates of Orion Partners whose involvement in the facts at issue in this Complaint is not known to Plaintiff at the time of filing.

## JURISDICTION AND VENUE

9. Defendants invoked the jurisdiction of this Court by filing a Notice of Removal on July 16, 2021, asserting that this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

10. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim arose in this District, and because Defendants are subject to personal jurisdiction in this District. 28 U.S.C. § 1391(b)(2)-(3).

## FACTS COMMON TO ALL COUNTS

### *Lewnowski and Franko Begin Meeting About a New Commodity Fund*

11. Lewnowski was a founding partner at Red Kite Capital Management ("Red Kite") and Orion Partners. In these capacities, Lewnowski established himself as a fundraiser for commodity trading funds. One of his partners at Red Kite, Barry Feldman, served as Red Kite's global head of physical trading from Red Kite's formation in 2005 until his death in August 2014.

12. In late 2013, Orion Partners and Lewnowski were looking to launch a new commodities trading fund to trade in precious metals and their derivatives in order to complement Orion's existing business in providing financing to mines. For that effort to start, however, Defendants needed to locate a chief investment officer to organize, launch, and lead the new venture. Feldman, a friend and professional colleague of Franko, proposed Franko for this crucial role as chief investment officer. Accordingly, Feldman introduced Franko to Lewnowski to discuss this new possible venture.

13. Franko, Lewnowski, and Feldman met for dinner in late November 2013 to discuss and review the new venture. At this dinner meeting, the parties agreed to commence work on the new venture, the idea being that Franko would serve as chief investment officer, focused on the fund's trading strategies and operations; and Lewnowski would serve as chief executive officer, focused on recruiting investors to the fund. This dinner also started Franko's extensive work to launch the new fund. Following the meeting, and at Feldman's encouragement, Franko emailed Lewnowski talking points and a proposed business plan that Franko created to establish a trading framework for this fund. Lewnowski responded positively to Franko's business plan and urged Franko to get into additional detail by producing a more comprehensive business plan. Franko did so, and this plan formed the basis of an extensive, nineteen-month long effort to develop and launch a new commodities trading fund known as the "Orion Commodities Fund."

14. Throughout 2014, Lewnowski and Franko continued their detailed planning for the venture. As part of these discussions, Lewnowski proposed that there would be four partners in this new venture: Lewnowski, Feldman, Franko, and Scott Hobart, who also worked at Red Kite. The discussions also included operations, financing, prime brokerage services, accounting, marketing, technology, and back office support. Franko participated in numerous efforts to organize and coordinate the launch of the new fund, including, among other things, meetings with outside vendors providing services such as information technology; discussions and meetings to select a prime broker for the fund; and extensive efforts to find and recruit traders to work in the new fund.

15. In January 2014, Mr. Feldman stepped back from his role because he was diagnosed with pancreatic cancer. Mr. Hobart subsequently withdrew as well. Around this time,

Lewnowski offered to provide Franko with additional equity in the venture that had originally been apportioned to others, in order to induce Franko to increase his degree of involvement. Franko accepted.

16. In the third quarter of 2014, an Orion in-house attorney, Dov Lader, provided Franko with further information regarding the legal structure of the new fund. The fund itself (then called the "Orion Hedge Fund LP") would offer limited partnership units to third-party investors. The general partner of this entity (then called "Orion Hedge Fund GP, Ltd.") would have ultimate responsibility for investment decisions, and the fund would contract with a management company (then called "Orion Hedge Fund Manager LLC") to manage its day-to-day business. This in-house attorney told Franko that "[y]ou along with the other principals will own an interest in both Orion Hedge Fund Management and Orion Hedge Fund GP," as Franko's compensation for the work performed, and to be performed, to launch the new venture.

17. Franko located and recruited the traders hired for the new fund. These individuals included Raphael Bonvillian, Senior Portfolio Manager, recruited from Dreyfus Commodities; and Matthew Heap, Portfolio Manager, also recruited from Dreyfus Commodities, where he served as Global Head of Metals Proprietary Trading. Mr. Heap's and Mr. Bonvillian's offer letters advised that "you will report to Michael Franko, the Chief Investment Officer of the Orion Commodities Fund." Other traders recruited for the Orion Commodities Fund included Michael Sheehan, who had previously worked at Rite Kite.

18. In early 2015, Franko and Defendants reached an agreement as to Franko's compensation for his work in connection with the venture. Under this agreement, and once the fund launched, Orion Partners would employ Franko as Chief Investment Officer of the Orion Commodities Fund at a salary of $1,500,000. They further agreed that, in return for his efforts to

organize and launch the fund, Franko would receive 35% of Class A limited partnership interests in Orion Commodities GP Limited a/k/a Orion Hedge Fund GP, and 50% of the Class A membership interests in Orion Commodities Management LLC a/k/a Orion Hedge Fund Manager LLC, along with certain Class B interests. This promise of equity compensation was confirmed in schedules and emails that Defendants provided to Franko.

19. Certain of the traders recruited to the Orion Commodities Fund were also to receive similar, although smaller, grants of equity to induce them to join the fund. Mr. Sheehan and Mr. Heath, for example, were to receive 10% and 5% of Class A interests in Orion Commodities GP Limited, respectively.

20. Franko performed extensive work with respect to the new fund's trading and information technology systems. He met with potential vendors to identify and select the best systems to acquire; he worked with the selected vendors, in order to establish the bespoke technology systems that the fund required for its trading platforms; and he oversaw the establishment of the trading platforms.

21. Over the rest of 2015, Franko continued working to help launch Defendants' new fund, including developing an organizational plan, risk controls, and a division of responsibility. Franko's efforts moved the concept of a new commodities trading fund to the eve of launch.

22. The parties targeted September 1, 2015 as the prospective launch date for the Orion Commodities Fund. The parties agreed that at that time, Franko would receive the equity interests in the Orion Commodities Fund promised him in return for the extensive efforts he had made since November 2013 to prepare for the fund's launch.

***Franko Keeps Defendants Fully Informed of CME's Investigation***

23. The CME Group ("CME") is an exchange on which commodity derivatives are traded. In early 2014, CME began an investigation of Franko in connection with an allegation that Franko engaged in disruptive trading practices in the copper market.

24. Upon learning of this investigation, and understanding that potential repercussions that CME sanctions could have, Franko immediately made Lewnowski and Feldman, and through them, Orion Partners, aware of the investigation. Franko also offered to step aside from the Orion Commodities Fund if the CME investigation presented a problem. Lewnowski, however, repeatedly assured Franko that the CME investigation would not be an impediment to Lewnowski's continued involvement in the Orion Commodities Fund. As a result of Lewnowski's assurances, Franko continued his work preparing the Orion Commodities Fund for launch.

25. In July 2015, CME proposed a consent order to settle its investigation of Franko. The settlement was favorable to Franko, involving a modest fine and brief suspensions of access to the CME trading floor and of direct access to electronic and clearing platforms owned or controlled by CME. But Franko believed that the allegations of disruptive trading practices were meritless and was uncertain whether he wanted to accept the proposal.

26. Given the imminent launch of the Orion Commodities Fund, however, Franko was particularly concerned as to the potential impact the settlement would have on the new venture—positive or negative. This impact was crucial to Franko's decision as to whether to accept or reject the proposed settlement. Accordingly, Franko told Lewnowski about the settlement proposal and solicited Lewnowski's view as to what impact the settlement would have on the new fund. Lewnowski's response was immediate and positive, portraying the settlement

as a very positive development that would have no impact on the fund's launch. In fact, Lewnowski urged Franko to accept the settlement, especially because it would resolve an open regulatory issue prior to the imminent launch of the Orion Commodities Fund. In an email dated July 13, 2015, Lewnowski described the proposed settlement as a "[g]ood outcome." In a subsequent phone call, he described the proposed sanction as a "parking ticket" and recommended that Franko accept the proposed settlement in order to clear any cloud that may surround the launch of the new fund.

27. Relying upon these assurances from Lewnowski, Franko accepted CME's proposed settlement. Franko would not have accepted the proposed settlement if not for Lewnowski's encouragement and expression of support. He certainly would not have accepted the settlement had he known it would deprive him of the equity participation in the Orion Commodities Fund, for which he worked so hard and for so long.

***Lewnowski Abruptly Terminates Franko's Involvement***

28. Lewnowski, however, immediately seized upon the CME settlement as a pretext to cut Franko out of the new fund. Within one week of Lewnowski's expression of support for the settlement, and in an abrupt about-face from terming it a "good outcome" and a "parking ticket," Lewnowski called Franko and told him that he was terminating Franko's involvement in the fund and that upon its launch, Franko would not be serving as its Chief Investment Officer. At a stroke, Lewnowski thereby deprived Franko of the equity that he had been promised as compensation for all of his efforts up to that date to launch the Orion Commodities Fund.

29. This came as a complete shock to Franko, who had told Lewnowski about the CME investigation from the outset of their efforts to launch the new fund. Indeed, Franko agreed to accept a settlement with CME only because Lewnowski encouraged him to do so.

Then, Lewnowski terminated Franko for accepting the very settlement that Lewnowski had encouraged.

30. Lewnowski chose to use the CME settlement as a pretext to cut Franko out of the deal. Worse still, Lewnowski justified this action by lying to investors and asserting that Franko never disclosed the CME investigation to him—when, in fact, Franko made Lewnowski aware of the investigation's existence since its commencement. As a result, after having spent many hundreds of hours over several years getting the fund ready for launch, Franko was terminated and never received any compensation for the work he had done in getting the fund ready for launch.

31. Following that call, in which Lewnowski cut Franko out of the new fund, Lewnowski has refused to take Franko's calls or otherwise communicate with Franko. Lewnowski offered Franko nothing to compensate him for the many hours of work that Franko put into launch the new commodities fund.

32. The fund launched shortly after Franko's termination. It became a commercial success in the metals/commodities business.

33. Defendants have refused to offer Franko even a dollar in compensation for his efforts. Their failure to do so simply reinforces the pretextual nature of the excuse given by Lewnowski for cutting Franko out of the Orion Commodities Fund.

34. Lewnowski cut Franko out of the fund on pretextual grounds for selfish purposes: he wanted to allocate to himself the equity that had been promised to Franko. This has now been admitted by Defendants. As noted, Defendants promised Franko 35% of the Class A interests of Orion Commodities GP Limited, with 50% reserved for Orion Resources; and 50% of the Class A interests of Orion Commodities Management LLC. In their August 23, 2021

letter to the Court, Defendants advised that Mr. Lewnowski and/or members of his immediate family, directly or indirectly, own ***all*** of the equity in these entities today.

**AS AND FOR A FIRST CAUSE OF ACTION**

***Breach of Contract***

*(By Plaintiff against all Defendants)*

35. Plaintiff repeats and reiterates the allegations contained in the preceding paragraphs as if set forth fully herein.

36. In early 2015, Franko and Defendants agreed, in clear and definite terms, that in exchange for Franko's continued work in developing the fund and preparing it for launch over the course of over nineteenth months (November 2013 to July 2015), Orion Partners would, upon launch, grant Franko equity interests in Orion Commodities GP Limited and Orion Commodities Management LLC.

37. Franko performed his obligations under this agreement by making substantial effort to prepare Orion Commodities Fund for launch. In fact, Franko's efforts were indispensable to the success of the new fund, and the Orion Commodities Fund could not have launched without his extensive work, preparation, and efforts.

38. The parties targeted September 1, 2015 as the launch date for the new fund. Defendants were to have delivered the equity interests to Franko on or immediately before that launch date, in which event the bargained-for exchange agreed to by the parties would have been completed.

39. On the eve of the new fund's launch and the date when they were required to deliver the equity to Franko, however, Defendants breached the agreement by cutting Franko out and refusing to provide him with the promised equity. As a result of this action, Franko never

received the equity interests that he had been promised even though Franko himself had fully performed his obligations through his nineteen months of work in preparing the fund for launch.

40. As a direct and proximate result of the breach by Defendants, Franko has suffered and continues to suffer injury for which Defendants should be held liable in damages.

**AS AND FOR A SECOND CAUSE OF ACTION**

***Breach of the Implied Covenant of Good Faith and Fair Dealing***

*(By Plaintiff against Defendants)*

41. Plaintiff repeats and reiterates the allegations contained in the preceding paragraphs as if set forth fully herein.

42. In early 2015, Franko and Defendants agreed, in clear and definite terms, that in exchange for Franko's continued work in developing the fund and preparing it for launch, Orion Partners would employ Franko as the Chief Investment Officer of Orion Commodities Fund with a guaranteed salary and equity interests in Orion Commodities GP Limited and Orion Commodities Management LLC.

43. Franko performed his obligations under this agreement by making substantial effort to prepare Orion Commodities Fund for launch.

44. In the alternative to Franko's claim for breach of contract, to the extent Orion Partners, Orion Commodities GP Limited, and/or Orion Commodities Management LLC did not breach the express terms of its agreement with Franko, they nevertheless acted deliberately in a manner intended to deprive Franko of the benefits of the contract and to prevent him from fully performing the contract.

45. As a direct and proximate result of the breach by Orion Partners, Orion Commodities GP Limited, and/or Orion Commodities Management LLC, Franko has suffered

and continues to suffer injury for which Orion Partners, Orion Commodities GP Limited, and Orion Commodities Management LLC should be held liable in damages.

**AS AND FOR A THIRD CAUSE OF ACTION**

***Common Law Fraud***

*(By Plaintiff against All Defendants)*

46. Plaintiff repeats and reiterates the allegations contained in the preceding paragraphs as if set forth fully herein.

47. As more fully set forth above, Lewnowski, acting on behalf of himself individually and on behalf of Defendants, made numerous material misrepresentations and omissions to Plaintiff regarding Orion Commodities Fund, including:

A. Misrepresenting that CME's investigation of Franko, which Franko voluntarily disclosed to Defendants, would not be an impediment to Franko's involvement as Chief Investment Officer of Orion Commodities Fund;

B. Misrepresenting that Franko's acceptance of CME's proposed settlement would be a "[g]ood outcome" and a "parking ticket" that would not be an impediment to Franko's involvement as Chief Investment Officer of Orion Commodities Fund;

C. Failing to disclose that Franko's acceptance of CME's proposed settlement would serve as a barrier to Orion Commodities Fund's ability to attain financing, when Lewnowski's comments regarding the settlement as a "good outcome" and a "parking ticket" led him to believe otherwise; and

48. Defendants formed a partnership with Franko when they agreed to combine their efforts to prepare and launch the Orion Commodities Fund. As a result of the formation of that partnership, Defendants assumed certain fiduciary duties—including a duty to disclose the

impact that the CME settlement would have on Franko's ability to continue participating in the Orion Commodities Fund.

49. When Lewnowski, acting on behalf of himself individually and on behalf of Defendants, made these misrepresentations and omissions, he knew them to be false and misleading or recklessly disregarded whether those misrepresentations and omissions were true or false.

50. Furthermore, Lewnowski, acting on behalf of himself individually and on behalf of Defendants, made these misrepresentations and omissions with the intent to defraud Plaintiff and the intent to induce Plaintiff to rely on them to its detriment.

51. At the time Lewnowski, acting on behalf of himself individually and on behalf of Defendants, made such misrepresentations and omissions, Plaintiff was unaware of the falsity of those misrepresentations and omissions and reasonably relied upon them to its detriment, including by continuing with extensive work over a period of months to prepare Orion Commodities Fund for launch. Further, Franko relied upon these misrepresentations and omissions when he chose to enter into the CME settlement. In the absence of these misrepresentations and omissions, Franko would not have agreed to the settlement proposed by CME.

52. As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiff has suffered and continues to suffer injury for which Defendants should be held liable in damages.

**<u>AS AND FOR A FOURTH CAUSE OF ACTION</u>**

***Fraudulent Inducement***

*(By Plaintiff against All Defendants)*

53. Plaintiff repeats and reiterates the allegations contained in the preceding paragraphs as if set forth fully herein.

54. As more fully set forth above, Lewnowski, acting on behalf of himself individually and on behalf of Defendants, made numerous material misrepresentations and omissions to Plaintiff regarding Orion Commodities Fund, including:

A. Misrepresenting that CME's investigation of Franko, which Franko voluntarily disclosed to Defendants, would not be an impediment to Franko's involvement as Chief Investment Officer of Orion Commodities Fund;

B. Misrepresenting that Franko's acceptance of CME's proposed settlement would be a "[g]ood outcome" and would not be an impediment to Franko's involvement as Chief Investment Officer of Orion Commodities Fund; and

C. Failing to disclose that Franko's acceptance of CME's proposed settlement would serve as a barrier to Orion Commodities Fund's ability to attain financing, when Lewnowski's comments regarding the settlement as a "good outcome" and a "parking ticket" led him to believe otherwise.

55. When Lewnowski, acting on behalf of himself individually and on behalf of Defendants, made these misrepresentations and omissions, he knew them to be false and misleading or recklessly disregarded whether those misrepresentations and omissions were true or false.

56. Lewnowski, acting on behalf of himself individually and on behalf of Defendants, made these misrepresentations and omissions for the purpose of inducing Franko to continue his

work toward launching the Orion Commodities Fund, even though Lewnowski knew that he would not ultimately allow Defendants to employ Franko as Chief Investment Officer.

57. Plaintiff reasonably relied on these representations in continuing his uncompensated work toward launching the Orion Commodities Fund.

58. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff has suffered and continues to suffer injury for which Defendants should be held liable in damages. These damages arise from both the misrepresentations concerning Plaintiff's future with Orion Commodities Fund and the misrepresentations concerning the benefits to accepting CME's proposed resolution to its investigation of Plaintiff.

## AS AND FOR A FIFTH CAUSE OF ACTION

***(Quantum Meruit / Unjust Enrichment)***

*(By Plaintiff against All Defendants)*

59. Plaintiff repeats and reiterates the allegations contained in the preceding paragraphs as if set forth fully herein.

60. Franko performed services for Defendants in good faith, including developing a business plan for and engaging in substantial work toward the launching of the Orion Commodities Fund over a nineteen-month period. Franko provided Defendants with extensive services over several years to ready the commodities fund for launch.

61. Defendants accepted Franko's services with respect to the development and launching of the Orion Commodities Fund. These services allowed the new fund to launch and contributed to the fund's commercial success.

62. Franko reasonably expected that he would be compensated for the reasonable value of his services with respect to the development and launching of the Orion Commodities Fund.

63. Franko estimates that he devoted over 1,400 hours to the work required to prepare the fund for launch. As Defendants agreed to compensate Franko at a $1,500,000 salary, Defendants agreed that Franko's time was worth $750 per hour (assuming 2,000 hours of work per year). Accordingly, on an hourly basis, the work that Franko performed for the benefit of Defendants, and which Defendants solicited and accepted, was worth over $1,000,000. This compensation was due and owing to Franko when Lewnowski abruptly terminated Franko's involvement with the Orion Commodities Fund in July 2015.

64. Despite demand, Defendants have refused to provide any compensation whatsoever to Franko for his extensive efforts.

65. Defendants did not compensate Franko for the reasonable value of his services with respect to the development and launching of the Orion Commodities Fund, including the fair market value of the hourly cost of services provided. As a direct and proximate result of Defendants' failure to so compensate Franko, he has suffered and continues to suffer injury for which Defendants should be held liable in damages.

## AS AND FOR A SIXTH CAUSE OF ACTION

***(Promise Causing Detrimental Reliance / Promissory Estoppel)***

*(By Plaintiff against All Defendants)*

66. Plaintiff repeats and reiterates the allegations contained in the preceding paragraphs as if set forth fully herein.

67. Lewnowski, acting on behalf of himself individually and on behalf of Defendants, made a clear and unambiguous promise to Franko that if he continued to work to get Orion Commodities Fund to launch, then after launch, he would receive the position of Chief Investment Officer of Orion Commodities Fund, a salary, and equity. Franko reasonably and

foreseeably relied on these promises in deciding to continue his work with respect to the development and launching of the Orion Commodities Fund.

68. Lewnowski, acting on behalf of himself individually and on behalf of Defendants, made a clear and unambiguous promise to Franko that the CME investigation was not a significant issue and would not be an impediment to Plaintiff's ability to serve as Chief Investment Officer of Orion Commodities Fund. Lewnowski further promised Plaintiff that if he accepted the CME's proposed resolution to the investigation (which Lewnowski described as a good outcome "[g]ood outcome" akin to a "parking ticket"), such acceptance would clear any cloud that may surround the launch of the new fund.

69. By terminating Franko, Defendants failed to fulfill their promise. As a direct and proximate result of Defendants' breaking of the promise on which Franko relied to his detriment, Franko has suffered and continues to suffer injury for which Defendants should be held liable in damages. These damages include both the damages from Defendants' failure to fulfill their promise and the damages arising from Plaintiff's acceptance of the CME's proposed resolution, which Plaintiff would have continued to fight but for Lewnowski's promises.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief against Defendants as follows:

A. Compensatory, incidental, and punitive damages, as appropriate, against Defendants, for the damages sustained because of the wrongdoing of Defendants, together with interest thereon;

B. Judgment in favor of Plaintiff on all Causes of Action of the Complaint with prejudice and such further relief as the Court deems just and appropriate;

C. Pre- and post-judgment interest;

D. Reasonable attorneys' fees and costs of suit; and

E. Such other and further relief as appears reasonable and just.

**JURY TRIAL DEMANDED**

Plaintiff demands a jury trial of all issues so triable.

Dated: September 21, 2021

**LOWENSTEIN SANDLER LLP**

By: /s/ Gavin J. Rooney
Gavin J. Rooney
Joseph A. Fischetti
1251 Avenue of the Americas
New York, New York 10020
Tel: 212.262.6700
grooney@lowenstein.com
jfischetti@lowenstein.com