```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
MICHAEL FRANKO,                                           :
                                                          :
                              Plaintiff,                  :
                                                          :       21-CV-6115 (VSB)
              - against -                                 :
                                                          :       OPINION & ORDER
                                                          :
OSKAR LEWNOWSKI, et al.,                                  :
                                                          :
                              Defendants.                 :
                                                          :
----------------------------------------------------------X
```

Appearances:

Gavin J. Rooney
Lowenstein Sandler LLP
New York, New York
*Counsel for Plaintiff*

Joshua Jeffrey Card
Benjamin Robert Nagin
Sidley Austin LLP
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

  Before me is the motion filed by Defendants Orion Resource Partners (USA) L.P. ("Orion Partners"), Orion Commodities GP Limited ("Orion Commodities"), and Orion Commodities Management LLC (together, with Orion Partners and Orion Commodities, "Orion"), and Oskar Lewnowski ("Lewnowski") (together, "Defendants"), seeking to dismiss Plaintiff Michael Franko's ("Plaintiff" or "Franko") Amended Complaint. (Doc. 16 ("Am. Compl.")) Because Plaintiff sufficiently alleges the existence of a contract upon which relief for his contract claims may be granted, but fails to allege a legal duty or misrepresentation separate

from his contract claims, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  Defendants' motion is GRANTED as to the Third and Fourth Causes of Action and DENIED as to the First, Second, Fifth, and Sixth Causes of Action.

## I.  Factual Background[1]

Defendant Lewnowski was a founding partner at Orion Partners, where he established himself as a fundraiser for investors in metals trading funds.  (Am. Compl. ¶ 11.)  Lewnowski is the chief investment officer ("CIO") of Orion Partners.  (*Id.* ¶ 4.)  According to Franko, in late 2013, Orion Partners and Lewnowski began discussing a potential launch of a new commodities trading fund to trade in precious metals (the "Fund").  (*Id.* ¶ 12.)  Barry Feldman, a partner of Lewnowski and professional colleague of Franko, suggested to Lewnowski that Franko could assist with the new venture.  (*Id.* ¶¶ 11–12.)  In late November 2013, Franko, Lewnowski, and Feldman met to discuss the possibility of creating the Fund.  (*Id.* ¶ 13.)  During this meeting they reached an agreement that Franko would be included as a partner and would serve as the Fund's CIO, and Lewnowski would serve as the chief executive officer ("CEO").  (*Id.* ¶¶ 13–14.)  Throughout 2014, Franko and Lewnowski continued discussions regarding formation of the Fund.  (*Id.* ¶ 14.)  During this time, Franko and Lewnowski also discussed other logistics related to the business, such as financing, operations, accounting, and marketing, and met with outside vendors and brokers.  (*Id.*)

In January 2014, due to personal health issues, Feldman stepped down from his role and lessened his involvement in development of the Fund.  (*Id.* ¶ 15.)  Lewnowski then offered Franko additional equity so that Franko would increase his involvement in the Fund.  (*Id.*)  In

---

[1] The following factual summary is drawn from the allegations of the Amended Complaint, which I assume to be true for purposes of these motions.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

2

late 2014, Orion Partners's in-house attorney, Dov Lader, sent Franko an email about the structure of the Fund and attached a draft term sheet. (*Id.* ¶ 16; Doc. 22 ("Lader Decl.") Ex. A.) In early 2015, Franko and Defendants agreed that Orion Partners would provide Franko 35% of the Class A limited partnership interests in Orion Commodities GP Limited, and 50% of the Class A membership interests in Orion Commodities Management LLC, along with certain Class B interests. (*Id.* ¶¶ 18, 22.) They also agreed that Orion Commodities would employ Franko as CIO at a salary of $1,500,000. (*Id.* ¶ 18.)

In early 2014, around the time Franko began discussions with Lewnowski about the Fund, CME Group ("CME"), an exchange on which commodity derivatives are traded, began an investigation into Franko's conduct based on an allegation that Franko engaged in disruptive trading practices in the copper market. (*Id.* ¶ 23.) Franko informed Lewnowski and Feldman about the investigation and offered to step aside from the Fund if the investigation presented a problem. (*Id.* ¶ 24.) According to Franko, Lewnowski reassured Franko that it would not be a problem. (*Id.*)

In July 2015, CME proposed a consent order to settle its investigation of Franko. (*Id.* ¶ 25.) Franko advised Lewnowski about the proposed consent order. (*Id.* ¶ 26.) Lewnowski encouraged Franko to enter into the consent order and told him that it was a "good outcome" and would not affect the Fund's launch. (*Id.*) Franko entered into the consent order. (*Id.* ¶ 27.) Less than a week after Franko signed the consent order, Lewnowski notified Franko that he was terminating Franko's involvement in the Fund and that he would no longer serve as CIO. (*Id.* ¶ 28.) Lewnowski then discontinued all communication with Franko. (*Id.* ¶ 31.) Consequently, Franko did not assume the role of CIO, did not receive the agreed-upon equity or salary, and had no further involvement with the Fund. (*Id.* ¶¶ 28, 30, 33.)

**II.     Procedural History**

Plaintiff initially filed this action in New York Supreme Court, County of New York, on July 12, 2021.  (Doc. 1.)  On July 16, 2021, Defendants filed a notice of removal to this Court.  (*Id*.)  On August 31, 2021, Defendants filed a motion to dismiss.  (Doc. 12.)  On September 1, 2021, I granted Plaintiff the opportunity to file an amended complaint and ordered that Plaintiff file any amended complaint within twenty-one days.  (Doc. 14.)  On September 22, 2021, Plaintiff filed his Amended Complaint in which he asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, common law fraud, fraudulent inducement, quantum meruit and unjust enrichment, and promissory estoppel.  (*See generally* Am. Compl.)  On October 5, 2021, Defendants filed a renewed motion to dismiss the Amended Complaint, (Doc. 21), the supporting declaration of Dov E. Lader, (Lader Decl.), and the supporting memorandum of law, (Doc. 23 ("MTD")).  Plaintiff filed his opposition memorandum of law on October 26, 2021.  (Doc. 24.)  On November 9, 2021, Defendants filed a reply memorandum of law.  (Doc. 25 ("Reply")).

**III.    Legal Standards**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Plausibility . . . depends on a host of considerations:  the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of

alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor." *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (per curiam); *accord Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 10(c). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

**IV.   Discussion**

    **A.   *Breach of Contract (First Cause of Action)***

The Statute of Frauds "is designed to protect the parties and preserve the integrity of contractual agreements." *William J. Jenack Estate Appraisers & Auctioneers, Inc. v. Rabizadeh*, 22 N.Y.3d 470, 476 (N.Y. 2013). "In short, the purpose of the Statute of Frauds is simply to prevent a party from being held responsible, by oral, and perhaps false, testimony, for a contract that the party claims never to have made." *Id*. (internal quotation marks omitted.) New York's Statute of Frauds invalidates agreements that are "not to be performed within one year from the making thereof," "unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith." New York courts "generally construe the statute of frauds

narrowly, voiding only those oral contracts which by their very terms have absolutely no possibility in fact and law of full performance within one year." *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 110 (2d Cir. 2014) (internal quotation marks omitted). "As long as the agreement may be fairly and reasonably interpreted such that it may be performed within a year, the Statute of Frauds will not act as a bar however unexpected, unlikely, or even improbable that such performance will occur during that time frame." *Cron v. Hargro Fabrics*, Inc., 91 N.Y.2d 362, 366 (N.Y. 1998) (internal quotation marks omitted).

Nowhere in Franko's Amended Complaint does he allege that the parties' agreement was committed to writing. Defendants argue that New York's Statute of Frauds voids the agreement because the terms of the agreement could not possibly be fully performed within one year. The agreement's terms can be understood to consist of (1) the agreement that Franko would continue his involvement with the Fund and serve as its CIO at a salary of $1,500,000, and (2) the agreement that, upon launch, Orion Partners would provide Franko 35% of the Class A limited partnership interests in Orion Commodities GP Limited, and 50% of the Class A membership interests in Orion Commodities Management LLC, along with certain Class B interests. (Am. Compl. ¶¶ 18, 22.) I will address each part of the agreement and the parties' respective arguments in turn.

### 1. Employment Agreement

New York's Statute of Frauds generally does not apply to at-will employment contracts, because termination could presumably occur within one year. *Ohanian v. Avis Rent A Car Sys., Inc.*, 779 F.2d 101, 108 (2d Cir. 1985). Accordingly, "employment agreements of this type are without the proscription of the Statute of Frauds concerning one-year performance." *Guilbert v. Gardner*, 480 F.3d 140, 151 (2d Cir. 2007) (internal quotation marks omitted).

The Amended Complaint alleges that, in early 2015, the parties agreed that "once the [F]und launched, Orion Partners would employ Franko as Chief Investment Officer of the . . . Fund at a salary of $1,500,000." (Am. Compl. ¶¶ 18, 42.)  Franko does not necessarily assert that the agreed-upon salary would compensate him for his work for the Fund following its launch, but instead alleges that Defendants agreed to pay him the $1,500,000 salary based on the calculation that "Franko's time was worth $750 per hour" and he had "devoted over 1,400 hours to the work required to prepare the [F]und for launch," equating to a salary "over $1,000,000." (*Id.* ¶ 63.)  Construing these allegations in the light most favorable to Franko, *Kassner*, 496 F.3d at 237, these allegations show that Franko's salary was to compensate him for his assistance in development of the Fund as well as for his future work and role as CIO, both of which reasonably could be fully performed within a year.  Hence, based on Franko's allegations, there is nothing that would deem that Franko's salary payment or his employment as CIO would "have absolutely no possibility in fact and law of full performance within one year." *D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 455 (N.Y. 1984).  To be sure, courts in this District applying New York law have held that an oral at-will employment contract is not *per se* voided by the Statute of Frauds, even if the agreement provides that the plaintiff would receive an annual salary.  *See, e.g.*, *Ream v. Hill*, No. 16-CV-7462 (VEC), 2018 WL 3579846, at *3 (S.D.N.Y. July 24, 2018) (rejecting argument that oral agreement in which plaintiff would "be paid an annual salary of $85,000" is barred by the Statute of Frauds); *Camp Summit of Summitville, Inc. v. Visinski*, No. 06-4994, 2007 WL 1152894, at *6 (S.D.N.Y. Apr. 16, 2007) (holding that "per year" salary does not make performance interminable within a year).  Therefore, even if the $1,500,000 salary could be viewed as the amount Franko would be paid per year this fact would not make the contract unenforceable under the Statute of Frauds.

Defendants rely on the cases of *Morgenweck v. Vision Cap. Advisors, LLC*, 410 F. App'x 400 (2d Cir. 2011) and *Kubin v. Miller*, 801 F. Supp. 1101 (S.D.N.Y. 1992), both of which held as void an oral agreement for profit and equity, for their argument that Franko's employment agreement is also voided by the Statute of Frauds. The former is distinguishable because, in that case, the Second Circuit Court of Appeals affirmed that the agreement that plaintiff receive "some percentage of annual profits" could not by its own terms be "earned and distributed within one year" and was therefore void. *Morgenweck*, 410 F. App'x at 402. As discussed, Franko alleges that his $1,500,000 salary—albeit presumably calculated to reflect annual compensation—was fixed to reward him for his assistance with developing and establishing the Fund, whereas the compensation in *Morgenweck* could not possibly accumulate, be calculated and then be disbursed after a year. *Id*. ("It is impossible that annual profits could be earned and distributed within one year of the alleged agreement.")[2] Similarly, in *Kubin*, the alleged oral contract required the defendant to pay plaintiff a percentage of the "operating income of the surviving company . . . on an annual basis," which the court held could not possibly occur within one year. 801 F. Supp. at 1109, 1120. Unlike the payments in *Morgenweck* and *Kubin* that were calculated annually and therefore could not be paid until after one year had elapsed, neither the agreement that Franko receive a $1,500,000 salary nor that he be employed as CIO of the Fund were impossible to fully perform within one year and are thus not voided by the Statute of

---

[2] Defendants point out that the agreement in *Morgenweck* entailed that plaintiff receive an equity share that included a percentage of annual profits, which reflects the terms of this agreement. (Reply 3 (citing *Morgenweck*, 2010 WL 9478990, at *3).) Defendants argue that "the equity at issue here is *all about* future payment streams" and reference the Fund's draft term sheet indicating that the Fund's General Partner and Investment Manager (both corporate entities) would "receive fee revenue paid on an ongoing, annual or periodic basis" and that by extension, Franko's equity stake is just a claim to profits that similarly would be paid out annually. (*Id*. 3–4 (citing Lader Decl. Ex. A at 10–12) (emphasis in original).) These documents and Defendants' argument, at the very least, present a factual dispute more relevant to the terms of the contract rather than the existence of the contract, which the parties do not meaningfully dispute here. In any event, construing Franko's allegations in the Amended Complaint as true and assuming performance could be completed in less than a year, the existence of a contract is "plausible on its face." *Iqbal*, 556 U.S. at 678.

8

Frauds.

### 2. Equity Interest

Franko further alleges in the Amended Complaint that the parties agreed Franko would receive the shares "in return for his efforts to organize and launch the fund." (Am. Compl. ¶ 18.) According to Franko, the shares would be granted "upon [the Fund's] launch." (*Id*. ¶ 36.) Like the agreement that Franko would be employed as CIO and compensated with a salary, this agreement should have been performed by the date of the launch, which could have potentially occurred—and, indeed, was expected to occur—within one year of the agreement. (*Id*. ¶¶ 18, 22 ("The parties target September 1, 2015 as the prospective launch date for the . . . Fund.").)

Defendants again rely on *Morgenweck* and *Kubin* for their contention that the agreement is void because distribution of shares could not possibly be fully performed within one year of the contract's formation. Unlike those cases, nothing about the agreement at issue here entitled Franko to annual payments. In *Morgenweck*, the Second Circuit explicitly affirmed that the provision that plaintiff "was owed some percentage of *annual* profits" was voided by the Statute of Frauds, rather than the "addition[al] . . . promised equity interest," because the express annual distributions made performance of the agreement impossible within a year.[3]  410 F. App'x at 401–02 (emphasis in original). Likewise, the court in *Kubin* explicitly held that the transfer of stock, the creation of a shareholder agreement, and the merger of several entities were not deemed void by the Statute of Frauds, but rather the agreement for the distribution of a percentage of the income to the plaintiff "on an annual basis" was barred because disbursement of annual profits could not by definition occur in less than one year. 801 F. Supp. at 1119–20.

---

[3] Again, to the extent the terms of the contract deem the agreement to provide equity shares interrelated with distribution of annual profits, as Defendants allege, a determination of this factual issue must await discovery rather than on a motion to dismiss, where I must deem the allegations in the Amended Complaint to be true. *Johnson*, 569 F.3d at 43.

Here, the absence of annual profits or distributions to Franko means that the agreement granting Franko equity interests in the Fund are not void.

Based on the foregoing, Defendants' motion is denied as to Franko's breach of contract claim.

### B. *Remaining Contract and Quasi-Contract Claims (Second, Fifth, and Sixth Causes of Action)*

Defendants dispute Franko's claims for breach of the implied covenant of good faith and fair dealing, quantum meruit and unjust enrichment, and promissory estoppel based on the same theory that his contractual or quasi-contractual claims are barred by the Statute of Frauds. (MTD 12–15; Reply 8–9.) *See also Zeising v. Kelly*, 152 F. Supp. 2d 335, 345 (S.D.N.Y. 2001) ("The New York Statute of Frauds provides that it 'shall apply to a contract implied in fact or in law [*i.e.*, a quasi-contract claim such as quantum meruit or unjust enrichment].'" (quoting N.Y. Gen. Oblig. Law § 5–701(a)(10))); *Zucker v. Katz*, 708 F. Supp. 525, 533 (S.D.N.Y. 1989) ("New York law clearly requires unconscionable injury for a court to enforce a promise under the doctrine of promissory estoppel that would otherwise be barred by the statute of frauds.")

As discussed *supra*, these arguments fail because Franko has established that, based on the Amended Complaint, the existence of a contract or quasi-contractual promise that is not defeated by the Statute of Frauds is plausible. Defendants' motion is therefore also denied as to Franko's claims for breach of the implied covenant of good faith and fair dealing, quantum meruit and unjust enrichment, and promissory estoppel.

Separately, the implied covenant claim is not duplicative of Franko's breach of contract claim. "[A] claim for breach of the implied covenant must be dismissed as duplicative when a breach of contract claim is pled on the same facts or when the conduct at issue is also the predicate for breach of the underlying contract." *Trireme Energy Holdings, Inc. v. Innogy*

*Renewables US LLC*, No. 20-CV-5015 (VEC), 2021 WL 3668092, at *4 (S.D.N.Y. Aug. 17, 2021) (internal citations and quotation marks omitted).  However, a claim for breach of the implied covenant is not duplicative where "there is a dispute over the meaning of the contract's express terms," *Spinelli v. Nat'l Football League*, 903 F.3d 185, 206 (2d Cir. 2018), or, to put it another way, "where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain." *Trireme Energy Holdings, Inc.*, 2021 WL 3668092, at *4 (internal quotation marks omitted).  "A party certainly cannot succeed on claims for both breach of an express contract term and breach of the implied covenant based on the same facts, but where . . . there is a dispute over the meaning of the contract's express terms, there is no reason to bar a plaintiff from pursuing both types of claims in the alternative." *Spinelli*, 903 F.3d at 206.

Franko alleges that he was deprived of the benefit of his bargain independent of the express terms of his contract because he was terminated weeks before the Fund's launch.  (Am. Compl. ¶¶ 28, 44.)  Thus, even if the parties' contract made Franko an at-will employee who could be terminated at any time under the express terms of the contract, Franko might still retain a viable claim for breach of the implied covenant of good faith and fair dealing.  The parties dispute the existence of a contract, much less its express terms.  Thus, at this stage, accepting all Franko's allegations as true and making all reasonable inferences in his favor, Franko's implied covenant of good faith and fair dealing claim is properly pled in the alternative and is not duplicative of his breach of contract claim.

### C. *Fraud Claims (Third and Fourth Causes of Action)*

In addition to his contract claims, Franko asserts claims for common law fraud and fraudulent inducement.  Franko bases these claims on Lewnowski's misrepresentations, namely

11

that the CME investigation and Franko's acceptance of the consent order would not hinder the creation of the Fund or Franko's future involvement in it. In cases where a plaintiff alleges fraud premised on a breach of contract claim, to sufficiently allege a fraud claim, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted). A plaintiff must also meet the heightened pleading standard for a fraud claim and "allege facts that give rise to a strong inference of fraudulent intent . . . by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Colpitts v. Blue Diamond Growers*, 2021 WL 981455, at *12 (S.D.N.Y. Mar. 16, 2021) (internal citations and quotation marks omitted).

      Here, Franko's fraud assertions directly emanate from his contract claims. Specifically, he claims that Lewnowski misled him into believing that the Fund would employ him as CIO, pay him a salary, and grant him an equity interest in the Fund. (Am. Compl. ¶¶ 47, 54.) These are the same factual underpinnings for Franko's contract claims. (*See supra* Section IV.A–B.) Franko does not allege any other separate legal duty from Defendants' duty to perform under the contract. Moreover, Franko's claims do not meet the heightened pleading standard of Rule 9(b), which requires him to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Franko only asserts that Lewnowski, through his encouragement that Franko settle the CME investigation, misled him to believe that entrance into the consent order would not affect his future at the Fund. This does not sufficiently demonstrate Lewnowski's motive to defraud Franko, nor does it present strong evidence of misbehavior or recklessness.

12

Franko's fraud claims must therefore be dismissed.

## V. Conclusion

Based on the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion to dismiss is GRANTED as to Plaintiff's common law fraud and fraudulent inducement claims, (Third and Fourth Causes of Action). Defendants' motion to dismiss is DENIED as to Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit and unjust enrichment, and promissory estoppel (First, Second, Fifth, and Sixth Causes of Action).

Defendants are directed to submit an answer to Plaintiff's Amended Complaint within twenty-one (21) days of the date that this Opinion & Order is filed.

The Clerk's Office is directed to terminate the open motion at Doc. 21.

SO ORDERED.

Dated: April 18, 2023
      New York, New York

_____
Vernon S. Broderick
United States District Judge